### In re FARRAND.
### Patent Appeal No. 2760.

Court of Customs and Patent Appeals.
May 27, 1931.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis and Dean S. Edmonds, both of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting six claims in an application for patent on alleged new and useful improvements in sound control apparatus. Two claims were allowed. Of those rejected, No. 14 seems fairly representative: "14. A loudspeaker comprising a support, a diaphragm mounted in said support, said diaphragm comprising a large direct-acting cone and a flexible rim connecting the edge of the cone to the support and forming with the walls of the cone an abrupt bend, and electro-magnetic actuating means for the cone comprising a field magnet having opposed polar faces forming an air gap between them and an armature co-axially connected with the cone and which is reciprocable in said air gap in a path parallel with said polar faces."

Three references are cited, to wit:

| | | |
|---|---|---|
| Hopkins, | 1,271,529, | July 2, 1918. |
| Hopkins, | 1,271,527, | July 2, 1918. |
| Siemens (Br.), | 4,685, | of 1877. |

As stated and as shown by the claims, the application relates to sound control apparatus. A physical demonstration before us was of a device used in radio receiving sets. The drawings disclose a loudspeaker having a support-carrying ring to which is attached a conic diaphragm. The diaphragm is electro-magnetically actuated by a coil, said coil being co-axially connected with the cone or diaphragm by a rod. The coil is movable or floatable in the field of a magnet, produced by a winding of small wire, located in

the air gap between a pole member and the core member. The circumferential flange of the diaphragm is rigidly clamped between clamping rings secured to each other by suitable means, as by screws. The diaphragm has a portion which forms, with the cone walls, a bend, thereby constituting a flexible rim for flexibly connecting the conical portion of the diaphragm to the support.

The essential elements of the combination are stated in appellant's brief to be: "(1) The flexible support for the cone, (2) the large direct acting cone itself and (3) the floating coil or floating armature electrical driving mechanism."

Claims Nos. 7 and 8 were allowed by the examiner. These had limitations to the floating coil as the electrical driving means, the claims stating the field magnet for said coil to be disposed on the concave side of the cone.

It is conceded that each feature or element of appellant's combination is shown in the prior art.

The patents to Hopkins show diaphragms and the other features appear in the patent to Siemens, the specification of which contains the following recitations relative to figures 5 and 6 of the Siemens drawings:

"Instead of an iron diaphragm or a nonmagnetic membrane, having on it an iron disc, nonmagnetic membranes may be employed, as shown in Figs. 5 and 6.

"In the construction, shown by Fig. 5, the vibrating diaphragm is a thin sheet of brass or German silver, to the centre of which is fixed a light coil u, preferably of aluminum. This coil is in an annular magnetic field produced by a powerful horseshoe magnet. When the diaphragm, which is in equilibrium, vibrates, currents are induced in the coil which moves with it, and these currents conveyed to the distant station cause a similar coil there to vibrate with its membrane, reproducing the sound pulses which gave motion to the former coil.

"According to the construction shown by Fig. 6 the coil in the magnetic field is fastened to a membrane, of parchment or other material of trumpet form, to increase the effect of the sound pulses.

"Telephones, like those shown in Figs. 5 and 6, without iron diaphragms, require powerful magnets, but they reproduce articulated sounds with great distinctness."

The diaphragms of the Hopkins patents relate primarily to phonographic reproduction and the Siemens patent relates to telephone reproducers.

It is the contention of appellant that, by the combination which he has made of the old elements, he has produced a new and useful result which is patentable, in that (a) his loudspeaker is novel in construction, operation and results; that (b) neither reference discloses the structure, mode of operation, or results obtained by his apparatus; that (c) extensive and important changes would be necessary in the references to secure these; that (d) patentability was recognized by the Patent Office by the allowance of claims 7 and 8; and that (e) his device has proven a great commercial success, having virtually supplanted all others in the radio field. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527, is cited as an authority which should control in the decision of the case.

That appellant has produced an apparatus which is superior to the devices used for the purposes for which his was devised, is doubtless true, but mere improvement without invention is not patentable. The question is: Has he, by his rearrangement of elements, all admittedly old, created something which gives a novel and useful result and did its creation require invention as distinguished from mechanical skill?

The particular result which is claimed as new and emphasized in appellant's brief and argument before us, as well as in a brief filed as amicus curiæ, under the court's permission, by counsel for Atwater Kent Manufacturing Company, a licensee of appellant, is that the combination comprises an apparatus which reproduces or transmits low tones or bass notes to an extent and with a success never before attained in the art. Of course, decided improvement in the transmission of all tones or notes is claimed, but the emphasis is placed as stated.

That the contentions with reference to the claimed result as to the low tones received careful consideration by the tribunals of the Patent Office is evident from an examination of their decisions. The case was in the Patent Office for many years, the application was many times amended, and affidavits in support of the claims were filed as permitted by the Patent Office rules.

It must be said that during the earlier consideration of the application the feature relating to the improved reproduction or transmission of low tones or bass notes as distinguished from the higher tones, or from

the better transmission of tones generally, does not seem to have been emphasized as later it came to be.

The specifications do not single out this feature for definite mention, but do recite the following as claimed advantages produced: "The total elastic restoring force, localized in the diaphragm and its flexible rim, may be kept down to that small and predetermined value that will cause the diaphragm to produce the sound waves directly in the surrounding air without sensible resonant distortion. In other words, the fundamental period of the tympanum will lie far down in the working range of frequencies. The armature by reason of its freedom from elastic restoring force of its own, adds nothing to the elastic restoring force of the diaphragm and does not upset or disturb the advantageous characteristics of the diaphragm."

The claims, of course, contain no specific statements as to any particular result produced.

It may be further said that the specification, while reciting that the device is usable in the radio art, dwells more upon its value in the telephone field, which is the field to which the Siemens patent primarily relates.

The first specific mention of bass notes found in the record is contained in the "remarks" accompanying certain amendments, proposed on July 1, 1927, where it is stated that, following certain experiments by Farrand: "The first attempts resulted in very weak responses. Moreover, the reproduction was lacking in bass tones."

The fair inference from the remainder of the argument made in the "remarks" alluded to, is that the defects thus spoken of were remedied by subsequent experiments. We, however, find it stated in these remarks: "Farrand knew that the paper cone disclosed in the Hopkins patent had been used commercially in phonographs with considerable success. He knew that Hopkins had succeeded in producing a phonographic reproduction of sound which was a marked improvement over anything which preceded him. Hopkins, by utilizing a large conical diaphragm, produced a sound regenerating device of the sounding-board type which regenerated the sound with greater efficiency than the sound-box horn combination, because the distortions inherent in the sound-box horn combination were eliminated. Farrand sought to obtain a reproduction of sound in the radio art which constituted as much of an improvement in radio reception as the Hopkins sound-reproduction constituted an improvement in the phonograph art."

It was probably this statement, coupled with the brief before the Board of Appeals, which led it to say, in its first decision (the case was twice before the board): "He [Farrand] also knew that the paper cone disclosed in the Hopkins patent had been used commercially in phonographs and realized that when actuated mechanically, as in a phonograph, it produced an adequate volume of sound over a wide range of frequencies such as to include very well the lower as well as the higher frequencies of recorded speech and music."

In the second decision of the board, rendered January 31, 1930, upon the application which finally, after years of unexplained delay, had reached the form that it now has, the feature of low tone reproduction or transmission was discussed almost exclusively, and the board failed to find any result in appellant's combination which entitled him to the patent sought upon the claims involved.

We have given the matter careful study in the light of the briefs and argument coupled with the demonstrations given in open court of the workings of the different devices. Had appellant shown satisfactorily that by his combination he had succeeded in evolving a device which reproduced or transmitted low tones and that this feature was lacking in the disclosures of the prior art, we should feel that he had accomplished a new and patentable result, but we are not convinced that such is the case.

Appellant has doubtless improved the transmission of these low notes just as he has the transmission of the higher notes—perhaps more markedly in the case of the former—but in both it appears to us to be merely a matter of degree, wrought by "actuating a large cone-shaped diaphragm electrically," using means old in the art of sound reproduction or transmission, each element of which in its new environment, functions just as it did in its former environment and for precisely the same purpose. The modifications of these old elements requisite to produce appellant's device were, in our opinion, merely a matter of mechanical skill.

These modifications necessary to produce the device do not so appear in the claims as to prevent them from reading on the prior art and the claims, not the device, constitute the measure of invention. It

seems to us that the combination is obvious to persons skilled in the art and, therefore, not new or novel in the patentable sense.

Such being the case, we do not think the doctrine of the "Grant Tire Case," Diamond Rubber Co. v. Consolidated Rubber Tire Co., supra, and of other cases cited by appellant, such as Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; and Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034, is controlling.

In the "Grant Tire Case," supra, the court expressly held that: " * * * A careful and painstaking study of the Grant patent increases the conviction that the skill and method employed in the selection and the new adjustment was not only intelligent, but that it resulted in something more than a contrivance of which any skilled mechanic would be capable. Grant studied the correct principle, and he fashioned and adjusted the parts to allow the principle to operate to the best advantage."

The same conviction does not result from the facts of the instant case.

The authorities cited by the tribunals of the Patent Office and by the solicitor for the office are more in point. Hailes v. Van Wormer, 87 U. S. (20 Wall.) 353, 368, 22 L. Ed. 241; Thatcher Heating Co. et al. v. Burtis et al., 121 U. S. 286, 7 S. Ct. 1034, 30 L. Ed. 942; In re Isherwood, 40 F.(2d) 987, 17 C. C. P. A. 1187, and cases therein cited; In re Bayer, 35 F.(2d) 66, 17 C. C. P. A. 614; In re Appleburg, 37 F.(2d) 620, 17 C. C. P. A. 820.

In the Hailes Case, supra (the "stove case"), it was said: "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner."

Attention has been given to the argument that the Patent Office recognized invention on appellant's part by granting claims Nos. 7 and 8, and to the insistence that these differ but slightly from the essential features of the pending claims. The limitations contained in those claims have been stated, supra.

The presumption is that it was by reason of the limitations contained that the examiner found them patentable, otherwise, it is to be assumed, they would not have been allowed. Since we do not find invention in those in which the limitations are not present, we cannot properly hold that they should be allowed simply upon the basis of the allowance of Nos. 7 and 8.

If, on the other hand, the limitations did not control and the allowed claims are, in meaning, virtually identical with those not allowed, then appellant would seem to have practically all the protection which would be derived from an allowance of the claims in issue.

The argument as to the commercial success of appellant's device has likewise been given consideration, as has the fact that the "practical art" has taken licenses under the pending application and extensively manufactured appellant's structure. These things, however, do not establish invention. The most that can be said for the latter is that it evidences the belief on the part of the licensee that the claims may be patentable. As for its wide commercial success, many elements may contribute to that. The fact that it is a successful device doubtless constitutes one of these elements, but trade success and invention are, of course, not synonymous terms in patent law. In re Kirke, 40 F.(2d) 765, 17 C. C. P. A. 1121; In re Lawson, 36 F.(2d) 525, 17 C. C. P. A. 743.

The decision of the Board of Appeals is affirmed.

Affirmed.