## UTAH RADIO PRODUCTS CO. et al. v. BOUDETTE et al.

### No. 3774.

District Court, D. Massachusetts.
Aug. 7, 1934.

6

Marcus B. May and Herbert A. Baker, both of Boston, Mass., for plaintiffs.

George K. Woodworth, of Boston, Mass., for defendants.

BREWSTER, District Judge.

This is an infringement suit involving claims 1, 2, and 5 of letters patent of the United States No. 1,855,168, issued to Clair L. Farrand, assignor to the plaintiff Lektophone Corporation. The plaintiff Utah Radio Products Company is a licensee. The defenses are noninvention and noninfringement. The defendants have filed a counterclaim.

Statement of Facts.

1. On April 19, 1932, upon his application filed April 22, 1926, letters patent of the United States No. 1,855,168 were issued to Farrand covering a loudspeaker of the dy-namic type, so called, made up of a number of mechanical and electrical elements so combined as to produce results which were said to be an improvement over prior practices.

2. Claim 1 reads as follows:

"1. A loudspeaker comprising a direct-acting cone, supporting means for the cone located substantially at the plane of the base of the cone and having flexibility to permit axial vibration of the cone, an actuating motor having a field magnet structure provided with pole pieces having opposing faces which form an air gap, an armature connected with the apex portion of the cone and movable between the pole faces within the air gap and in a rectilinear path parallel with the pole faces, and supporting means for said armature in addition to said supporting means for the cone, said armature supporting means having flexibility to permit vibration of the armature in its path parallel with the pole faces but adapted to hold the armature against displacement in all directions at right angles to said path."

Claim 2 adds a further limitation, namely, that the direct-acting cone to which the armature is attached be free to vibrate axially with negligible elastic reaction.

Claim 5 shows the same elements of the combination, stated in somewhat different language.

3. The patent is for a combination of five elements, all taken from the prior art. These elements are:

(a) Direct-acting cone. This element is conical in shape, of light material yet strong enough to move through large distances at the frequencies of sound and of such dimension as to reproduce the sound without the necessity of a sound box or horn.

(b) Voice coil. Connected with the apex of the cone is an armature or voice coil through which the variable electric currents flow that are to be changed into sound. This coil moves within an air gap, hereinafter referred to, in a rectilinear path parallel with the pole faces of the field magnet structure.

(c) Field magnet structure. This element is a structure with pole pieces having opposing faces forming a small air gap in which the voice coil floats with the smallest possible clearance between the coil and the pole pieces.

(d) Supporting means at apex of cone. This supporting means supports the armature or voice coil, is flexible to permit axial vibrations of the armature, and adapted to hold it against displacement radially.

(e) Supporting means at base of cone. This supporting means is one which has flexibility to permit axial vibration of the cone, and which at the same time holds the cone in its proper radial or central position so that the voice coil attached at the apex will move in the narrow air gap without touching the pole faces.

4. The second claim relates to a direct-acting cone, free to vibrate axially with "negligible elastic reaction." The term "negligible elastic reaction" is a highly technical one. For present purposes it may be sufficient to state that supported structures such as the cone and coil have one frequency of vibration at which they respond or vibrate most easily. This is called the "fundamental frequency," or the resonant point of the structure. When the structure is vibrated below the fundamental, elastic reaction becomes important. If the supporting structure is such that it has negligible elastic reaction throughout the range of sound frequencies which it is desired to reproduce, the natural resonant point of the structure will be below the range of frequencies it is desired to reproduce; large excursions will be possible and the fidelity of reproduction will be improved. For this reason Farrand supports his cone and coil at two points with flexible supports, thus making it possible, as he claims, to have true axial movement, a negligible elastic resistance, and fidelity of reproduction.

5. In his specifications, Farrand recites that the principal object of the invention is to provide a loudspeaker of the dynamic type with flexible support for the diaphragm supplemented by a flexible support for the armature which will permit of movement axially but not radially.

6. The defendant has introduced numerous patents, including British and French patents and other publications, for the purpose of showing the state of the art when Farrand entered it, and to show also what had been published two years prior to Farrand's application April 22, 1926. These patents and publications are taken from the telephonic and phonographic art, and a few relate to radio loudspeakers. Plaintiff concedes that each element of his combination is old. It is also true that these elements had been earlier disclosed in different combination.

It must also be apparent that the basic principles upon which loudspeakers have been developed were old. As early as 1877 Siemens (Br. No. 4,685) had invented an improved telephone receiver which embodied a direct-acting cone and an electrical actuating device. Of the numerous cited patents and publications between that date and 1924, it is only necessary to consider a few, since those excluded show one or more of the elements of the patent in suit or devices designed to be used with sound box and horn. None of them show the flexible supports of Farrand's patent.

7. Brown (Br. No. 29,883) (1910) shows a device for reproducing sound by electrical means and which had particular reference to telephone receivers. It had a conical diaphragm, an armature attached thereto, an electro-magnetic core at an appropriate distance therefrom. The periphery of the cone could be entirely free or attached to a flexible ring fixed to the casing enclosing the device. In the latter case the cone was supported both at the apex and its periphery, both supports being flexible. The casing to some degree apparently performed the function of a sound box. Although the device was intended only for use as a telephone receiver, demonstration in court of the device as a radio speaker, built substantially according to the teachings of the patent, showed that it would reproduce sound audible for some distance, and if a baffle board were used, the results were fairly true, though nothing like the results obtained in the modern dynamic speaker.

8. Hopkins (U. S. 1,271,529) (1918) covering an acoustical device, adapted for use with the phonograph, is important only in that he discovered that the horn and sound box were no longer necessary in order to attain satisfactory sound reproduction. The invention was particularly directed to the attainment of a "direct propagation in free air" of sound waves without the use of horn, megaphone, or other amplifiers. This patent has been the subject of considerable litigation, and in order to escape anticipation has been narrowly limited.

9. Another patent cited by defendant is U. S. 1,847,935, issued in 1932, upon Farrand's application filed April 23, 1921, before the date of his present invention which, according to his evidence, was not earlier than the summer of 1921. This patent covered a loudspeaker of the dynamic type which came to be known as the Phonetron. It had all the elements, mechanical and electrical, of the claims in suit, except that the identical flexible supports are not disclosed. The electrical actuating device, the voice coil, the air gap are all disclosed. The coil armature is attached to the apex of the cone, but on the concave side instead of the convex, and the base of the conical diaphragm is held rigid-

8

ly in place by clamps or clamping rings. Applicant was awarded only two out of eight claims, and these were severely limited. He was not satisfied with the action of the Patent Office and prosecuted an appeal to the Court of Customs and Patent Appeals. In re Farrand, 49 F.(2d) 1035. This reference has a significant bearing upon the legal aspects of the case and will be referred to again.

10. Respecting the patent in suit, Farrand's claims were repeatedly rejected in the Patent Office upon earlier patents until he had persuaded the authorities that his means of supporting flexibly both the base of the cone and the coil was an improvement over Hopkins (U. S. 1,271,529), Harrison (1927) (U. S. No. 1,613,609), and Pollak (1909) (U. S. No. 939,625). The records of the Patent Office disclose that Farrand frequently stressed the advantage of the flexibly supported coil type armature in combination with the flexibly supported conical diaphragm. The representations of the applicant must be taken to limit the novelty in the invention to the means disclosed in his specification for flexibly supporting the cone at its base and supporting flexibly the coil or armature attached to the apex of the cone.

11. Farrand conceived and disclosed his invention in May, 1921. He applied for a patent on April 22, 1926. His claims were rejected. An interference was declared and later dismissed, all counts being held unpatentable. Numerous amendments were made, new claims added, then rejected, until on October 17, 1929, a divisional application was filed upon which, on April 19, 1932, the patent in suit was issued but not until the applicant had succeeded in overcoming by argument and amendments the rejections of the claims of the divisional application. Five claims survived the controversy, three of which are here involved. Two claims, limited to the construction of the flexible supports, are not claimed by plaintiff to be infringed.

12. The plaintiffs offer as excuses for the delay of five years in filing the parent application, and eight and one-half years in filing a divisional application, (a) experimentation, (b) expense of energizing the device, and (c) the interference proceedings. I do not find that any of these reasons is sufficiently established to afford an adequate excuse for the delays. It is a fair inference from the facts of the case that it was the pendency of appeals from adverse action upon broader claims in Farrand's 1921 application relative to the Phonetron, that led Farrand to postpone application for his modification of the Phonetron shown in the patent in suit. The applications of 1926 and 1929, in my opinion, represent renewed attempts to cover by broad claims important phases of the loudspeaker art, in the hope that applicant's assignee, Lektophone Corporation, might compel manufacturers and dealers in dynamic speakers to take licenses from it.

13. The plaintiff Lektophone Corporation, of which Farrand is a stockholder and director, is assignee of the patent on the Phonetron, assignee of the parent application and of the patent in suit. It also, as assignee, has been involved in much litigation over the Hopkins patent wherein that patent has either been held invalid or given an extremely limited scope. The Lektophone Corporation is a holding company and not a manufacturer of radios or loudspeakers.

14. The defendants manufacture and sell loudspeakers under United States letters patent No. 1,893,049, issued January 3, 1933. This device embodies all the essential elements of plaintiffs' patent. It does not have a free-acting cone, as it follows Hopkins and the Phonetron in supporting the base of the cone by annular clamps or rings. The means adopted for the flexible support of the coil armature and apex of the cone differ from the means shown in Farrand's patent. If plaintiffs' patent is to be limited to the specific form of the supporting means shown in the drawings and specifications, then defendants' loudspeaker would not infringe. If, on the other hand, any range of equivalents can be accorded the Farrand patent, the defendants would be chargeable with infringement.

15. Referring to the defendants' counterclaim, the evidence shows that at some time after plaintiffs' patent had issued, representatives of the Utah Radio Products Company warned retailers of radio receivers that they might have trouble if they sold any receivers which contained unlicensed loudspeakers. The business of the defendants was the manufacturing and selling of their loudspeakers to manufacturers of radio receiving sets.

About three months before the defendants were sued, suits were instituted in New York by the plaintiffs against Wanamaker's, Bloomingdale, and the H. & B. Radio Company, charging infringement of the Farrand patent by the sale of radio sets containing unlicensed speakers, including those manufactured by the defendants. Licenses were taken by the other manufacturers involved in the suits, and as to them the proceedings were discontinued. The defendants refused to take a license and have undertaken the defense of

the three suits pending in New York. Thereupon the present suit was instituted. One of the defendants testified that, following the suits in New York, against the retailers of radio receiving sets with the Boudette loudspeaker, their sales fell off 50 per cent. Whether, and to what extent, this was due to the litigation does not clearly appear from the evidence, but it is a fair inference that the activities of the plaintiffs contributed materially to this result. These three suits, as well as the case at bar, were apparently part of a widespread campaign to compel manufacturers of loudspeakers to pay tribute to the Lektophone Corporation. This is evidenced by the fact that over fifty infringement suits were brought throughout the United States within a few months after the patent issued. These suits resulted in many instances in licenses to the defendants who had been sued.

### Conclusions of Law.

■ Each element or feature of Farrand's combination is shown in the prior art. This is conceded. Nothing new is disclosed in the device unless it be the specific means described in the drawings and specifications for supporting the armature. Farrand's application in 1921 for a patent covering his Phonetron showed a flexible support for the periphery of the cone. It was not invention to associate Hopkins' free-acting conical diaphragm with an electrical actuating device borrowed from the prior art. In re La Montagne (Cust. & Pat. App.) 47 F.(2d) 975. The only new feature introduced into the combination by Farrand which differentiates it from that shown in the Phonetron is the flexible support for the "coil type armature," the advantage of which, according to Farrand, was to insure movement of the armature in the air gap between the pole faces in a rectilinear path parallel with the pole faces, thereby avoiding tilting and the resultant contact with the faces.

The history of the protracted proceedings in the Patent Office, as revealed in the file wrapper, as well as the opinion of the court in In re Farrand, supra, compels the limitation of the claim to the slight advance over the Phonetron which can be found only in the means Farrand employed in flexibly supporting the cone at both the base and the apex. Smith, Adm'x, v. Magic City Kennel Club, 282 U. S. 784, 51 S. Ct. 291, 75 L. Ed. 707.

■ Was this new method of holding the armature in its true position, free to move axially but not radially, patentable novelty?

In re Farrand, supra, while perhaps not binding on this court, is nevertheless entitled to great weight inasmuch as it is the unanimous decision of five judges of the Court of Customs and Patent Appeals affirming a decision of the Board of Patent Appeals. The court upheld the Patent Office in rejecting as unpatentable certain broad claims for an improvement on a sound control apparatus which came to be known as the "Phonetron." The illustrative claim considered was as follows:

"14. A loudspeaker comprising a support, a diaphragm mounted in said support, said diaphragm comprising a large direct-acting cone and a flexible rim connecting the edge of the cone to the support and forming with the walls of the cone an abrupt bend, and electro-magnetic actuating means for the cone comprising a field magnet having opposed polar faces forming an air gap between them and an armature coaxially connected with the cone and which is reciprocable in said air gap in a path parallel with said polar faces."

It will be noted that this claim embraces, among other features found in the claims in suit, a flexibly supported base of a direct-acting cone. Of necessity, the electro-magnetic actuating means connected with the cone had to be so supported that it would be free to move axially in a path parallel with the pole faces. I can see no substantial difference between this claim and the claims of the patent in suit, except that the flexible supports are more prominently featured, and such a support for the coil armature is mentioned.

Regarding the earlier claim, the court said:

"Had appellant shown satisfactorily that by his combination he had succeeded in evolving a device which reproduced or transmitted low tones and that this feature was lacking in the disclosures of the prior art, we should feel that he had accomplished a new and patentable result, but we are not convinced that such is the case.

"Appellant has doubtless improved the transmission of these low notes just as he has the transmission of the higher notes—perhaps more markedly in the case of the former —but in both it appears to us to be merely a matter of degree, wrought by 'actuating a large cone-shaped diaphragm electrically,' using means old in the art of sound reproduction or transmission, each element of which in its new environment, functions just as it did in its former environment and for precisely the same purpose. The modifications of these old elements requisite to produce appellant's device were, in our opinion, merely a matter of mechanical skill."

It is apparent from the opinion of the court that they were considering an apparatus which embraced with a single exception all the elements incorporated in the claims here involved and in precisely the same association. The exception is the flexible support for the coil-armature. I cannot agree with plaintiff that the addition of this element, at best only a slight modification, is enough to enable the claims to escape the fate that befell the claims in Re Farrand, supra. Electric Cable Joint Co. v. Brooklyn Edison Co., 54 S. Ct. 586, 78 L. Ed. 1131, decided April 2, 1934.

The observations of the learned court are particularly apposite to the present case, especially in view of the scope of the language employed to state the claims now involved. These claims are broad enough to include any flexible supporting means for supporting the base of the cone, and any such means for supporting the armature. So construed, they read upon the prior art and can no more be sustained than the rejected claims considered in Re Farrand, supra.

The patentee gains nothing by the use of the words "negligible elastic reaction" in his second claim. These words describe a result rather than an element, and it appears from the decision in Re Farrand, supra, that this result was, at late stages of the proceedings, particularly stressed though presented in somewhat different language.

While the term may not appear, the result it suggests, namely, a fundamental period below the lowest desired frequency, inevitably follows from disclosures of the earlier patented art, e. g., Hopkins and Brown.

If it be urged that the free edge cone is a novel feature, distinguishing the device from the clamped edge cone of the Phonetron, and of many other loudspeakers which came into use before Farrand's divisional application was filed, a complete answer to that argument is that no mention of that is made in the claims which must be taken as the measure of the patent. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122.

The broad invention described in the claims was old. Features, not mentioned in the claims, cannot be included in order to limit such claims and avoid a defense of anticipation. McCarty v. Lehigh Valley Railroad Company, 160 U. S. 110, 16 S. Ct. 240, 40 L. Ed. 358; Bates & Klinke, Inc., v. Peters Patent Corp. (C. C. A. 1) 73 F.(2d) 303, decided June 14, 1934.

My conclusions are that the patent in suit is invalid for the reasons above indicated.

### Counterclaim.

I have also reached the conclusion that the defendants are entitled to prevail in their counterclaim. In my statement of facts, I have already found that the plaintiffs embarked upon an extensive campaign to enforce asserted rights under the Farrand patent. Farrand was an officer of the company, and he, at least, was chargeable with knowledge of the difficulties he had experienced in the prosecution of his claims for a patent and of the limitation that necessarily must be given these claims if invention were involved. He also was aware of the decision of the Court of Customs & Patent Appeals in Re Farrand, supra. He could hardly have been unmindful of the uncertainty respecting the validity of his patent. Without waiting to have the validity tested in a court of competent jurisdiction in a contested proceeding, the plaintiffs immediately proceeded to sue fifty or more manufacturers and dealers engaged in the manufacture or sale of radio receivers or loudspeakers, including the defendants and dealers who sold their speakers. Such activity can only have one purpose, and that is to harass the trade and compel the payment of tribute to the plaintiff Lektophone Corporation. This company was a holding company. The defendants were among its victims. It is a reasonable inference that its income was derived largely from royalties paid by licensees. The facts established entitle the defendants to equitable relief. Hazeltine Corp. v. Atwater Kent Mfg. Co. (D. C.) 34 F.(2d) 50.

The defendants may have an injunction enjoining the plaintiffs from prosecuting the three suits in New York, and an interlocutory decree may be entered referring this suit to a master, to ascertain and report to the court the amount of damages which defendants have sustained as a result of the acts of the plaintiffs.