## SMITH, ADMINISTRATRIX, *v.* MAGIC CITY KENNEL CLUB, INCORPORATED, ET AL.

No. 77. Argued January 28, 1931.—Decided February 25, 1931.

*Mr. E. Howard McCaleb* for petitioner.

*Mr. Arthur C. Brown* for respondents.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This suit was brought in the District Court of the United States for the Northern District of Oklahoma to enjoin the infringement of letters patent No. 1,379,224, May 24, 1921, and No. 1,507,440, September 2, 1924 (and also three other patents not here involved) issued to Owen P. Smith, the petitioner's intestate, for improvements in devices for dog races. A Special Master was appointed to hear and determine the issues. The Master reported that each of the patents was valid and infringed. The District Court approved the report, and entered a decree for injunction, and for recovery, upon a bond given under the order of the court, of damages. This decree was reversed by the Circuit Court of Appeals for the Tenth Circuit. 38 F. (2d) 170. This decision was in conflict with that of the Circuit Court of Appeals for the Fifth Circuit in *American Electric Rabbit Racing Assn.* v. *Smith*, 26 F. (2d) 1016, affirming, without discussion, the decree of the District Court for the Eastern District of Louisiana, 21 F. (2d) 366, which held patents No. 1,379,224 and No. 1,507,440 to be valid and infringed. In view of this conflict, this Court granted a writ of certiorari in the instant case. 281 U. S. 714.

These patents were also before the District Court for the Southern District of Ohio, in *Smith* v. *Springdale Amusement Park*, where the bill of complaint was dismissed for want of infringement, 39 F. (2d) 92, and the decree was affirmed by the Circuit Court of Appeals for the Sixth Circuit, 40 F. (2d) 173; certiorari granted, *post*, p. 823.

*Patent No. 1,379,224.* The claims in suit are numbers 1 and 2, as follows:

" 1. In a dog racing amusement, a race course suited for dogs, a casing extending around the outer side of the race course and provided with a longitudinal opening, a mechanical conveyer including a track extending around the race course and located within the casing, and a conveyer car mechanically operated upon said track and provided with an arm extending through the longitudinal opening of the casing in a projecting position over the track and adapted to carry a lure, and a wheel rotatably mounted on and supporting the arm at the projecting end thereof.

" 2. In an amusement, the combination of a race course suited for dogs, a covered rail track adjacent said course on one side, a conveyor car mechanically operated upon said track, a horizontally extending arm hinged to said car extending midway of said course, a wheel rotatably mounted near the end of said arm, and resting upon the ground, a platform supported by said arm and a lure or quarry mounted upon said platform for attracting the dogs."

The prior art shows various contrivances for carrying an artificial lure around a track in front of racing dogs. Hind, 1884 (British, No. 4274) described an inanimate lure moved by means of a rope traveling along a sunken trough. Pinard, 1887 (No. 362,396) proposed a lure-carrier dragged upon the ground by a cable winding upon a drum at the end of the track. Moss, 1896 (British, No. 9058) showed a device, on the order of an electric trolley system, with a rail laid on the race course. Walsh, 1898 (No. 611,876) placed his conveyor car adjacent to the track and separated from it by a fence, and provided an arm reaching over the fence and connected with another arm, pliant or stiff, which extended downward to the lure-carrying mat dragging on the ground. Smith, 1912 (No. 1,038,504) provided an underground track, within and beneath the race course, and a conveying mechanism hidden from view and carrying the lure which

was visible above the ground. Everett, 1913 (No. 1,052,-807) followed Smith, using an underground cable.

Smith, in the combination for which the patent in suit (No. 1,379,224) was issued, placed his covered rail track adjacent to the race course, and he connected the coöperating elements of conveyor car and lure by an arm horizontally extending over the course. The distinctive feature of his invention is set forth in claim 1 as " an arm extending through the longitudinal opening of the casing in a projecting position over the track and adapted to carry a lure, and a wheel rotatably mounted on and supporting the arm at the projecting end thereof "; and, in claim 2, as " a horizontally extending arm hinged to said car extending midway of said course, a wheel rotatably mounted near the end of said arm, and resting upon the ground, a platform supported by said arm and a lure or quarry mounted upon said platform for attracting the dogs."

The petitioner asserts that, by his apparatus, Smith surmounted the difficulties encountered in the impracticable devices of the prior art and led to commercial success. The Circuit Court of Appeals in the instant case, while finding that there was no infringement, had no doubt that Smith's device was an improvement over the prior art and assumed that it was patentable, 38 F. (2d) at p. 171. We make the same assumption. Smith's improvement, however, was in a limited field. There was manifestly no invention in a combination consisting of a rail track, with a casing adjacent to the course, a conveyor car, and an arm projecting over the course and connected with a mechanical lure carried in advance of racing dogs. Patentability could be predicated of Smith's improvement, only by reason of the distinctive feature of the arm which he employed.

The differences in the respondents' apparatus, which are urged as avoiding infringement, are that the respond-

ents use a rigid horizontal arm; that it is not hinged to the car; that there is no wheel; and that the arm has no ground support at its free end; and, further, that the respondents have located their conveyor housing on the inner side of the race course, while claim 1 of the patent puts the casing on the outer side. We may at once dispose of the latter point, as we find no basis for the conclusion that the invention of the patent is limited to a location of the casing on the outer side of the course. There is no such limitation in claim 2. The important question is whether the patent covers a rigid horizontal lure-carrying arm without ground support.

It appears from the file wrapper that in the application, which resulted in patent No. 1,379,224, Smith made, among others, the following claim:

" 3. In an amusement, the combination of a race track suited for dogs, a covered rail track adjacent said course, a conveyor car mechanically operated upon said track, an arm attached to said car extending midway of said course, a wheel rotatably mounted on said arm and a lure mounted on said arm."

This claim was rejected on the prior patent to Walsh (No. 611,786). Another claim (then numbered 4) was allowed as originally presented, and is claim 2 of the patent. Smith did not contest the rejection of original claim 3, above mentioned, but proposed an amendment which related to the casing. This amendment was rejected " on either Walsh or Moss," the examiner stating " that Moss is provided with a housing and it would not be invention to provide Walsh with one." Without further contest, Smith then canceled the rejected claim 3 and substituted what is now claim 1 of the patent. On comparing the claim as thus allowed and the rejected claim, it appears that the important difference was that instead of claiming " an arm attached to said car extending midway of said course, a wheel rotatably

mounted on said arm, and a lure mounted on said arm," the claim was made to read " an arm extending through the longitudinal opening of the casing in a projecting position over the track and adapted to carry a lure, and a wheel rotatably mounted on and supporting the arm at the projecting end thereof."

The petitioner insists that the gist of Smith's invention was "the straight out lure-carrying arm laterally extending and operating exclusively in a substantially horizontal plane." But it will be observed that the rejected and abandoned claim was the broad one of " an arm attached to said car extending midway of said course," and that the new claim, as proposed and allowed, did not specify a horizontal arm alone. The essential difference in the allowed claim lay in the specification of the wheel " as supporting the arm at the projecting end thereof." Claim 2 (original claim 4), which was allowed without question, specified a horizontal arm hinged to the car and resting on a wheel. A rigid, horizontal arm, without hinge or wheel, was not the subject of either claim.

The case, in our opinion, thus calls for the application of the principle that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent. *Shepard* v. *Carrigan,* 116 U. S. 593, 597. As this Court said in *I. T. S. Rubber Co.* v. *Essex Rubber Co.,* 272 U. S. 429, 443: " If dissatisfied with the rejection he should pursue his remedy by appeal; and where, in order to get his patent, he accepts one with a narrower claim, he is bound by it. *Shepard* v. *Carrigan, supra,* 597; *Hubbell* v. *United States,* 179 U. S. 77, 83. Whether the examiner was right or wrong in rejecting the original claim, the court is not to inquire. *Hubbell* v.

*United States, supra,* 83. The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers. *Sargent* v. *Hall Safe & Lock Co.,* 114 U. S. 63, 86; *Shepard* v. *Carrigan, supra,* 598; *Hubbell* v. *United States, supra,* 85. The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. *Morgan Envelope Co.* v. *Albany Paper Co.,* 152 U. S. 425, 429."

The petitioner resorts to the doctrine of equivalents, insisting that the rigid horizontal arm of the respondents is to be treated as the equivalent of the arm of the patent, and that the limiting specifications of the claims may be ignored. What has already been said disposes of this contention, for where a patentee has narrowed his claim, in order to escape rejection, he may not " by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments which amount to disclaimer." *Weber Electric Co.* v. *Freeman Electric Co.,* 256 U. S. 668, 677, 678; *I. T. S. Rubber Co.* v. *Essex Rubber Co., supra.* It should also be observed that the difference here was both in structure and in mode of operation and result. Petitioner's witness testified that Smith " built cars with rigid arms and had the arms snap off," and " that is why he went to the wheel and hinge. It reduces the friction there, I guess you would call it, crystallizing the arm from the vibration. If the arm was at the end and no wheel to support it, it would naturally drag on the track." Respondents' witness testified that the difference in the arm they used, which does not in-

clude the wheel for supporting the arm, is that when the arm "has a wheel under the end as it runs over the track, it doesn't have any vibration"; that vibration makes the lure "jump up and down" giving it a more lifelike appearance.

We agree with the decision of the Circuit Court of Appeals that infringement of letters patent No. 1,379,224, was not established.

*Patent No. 1,507,440.* This patent is for "Housing for Conveyor Cars and Tracks." It relates to the casing element called for by patent No. 1,379,224. The claims as originally presented were rejected "as indefinite and as aggregations." Other claims were substituted, which included claim 1 of the patent, as allowed, as follows:

"1. In a housing for covering tracks and cars having laterally extending arm operated upon said track, the combination of posts set in the ground at the sides of said track, timbers attached to said posts to form a frame, and boards attached to said timbers and posts to form a continuous enclosure above said track, and having a continuous opening in one side of said housing adapted to permit extension of the laterally extending arm, therethrough, and truss rods attached to the closed side of the housing adapted to support the side of said housing above the said continuous opening."

All the elements in this claim were old. So far as the continuous opening "adapted to permit extension of the laterally extended arm" is concerned, there was anticipation by Bertram, 1903, No. 729,120, whose housing for a third or electric rail disclosed a similar method of contact with an outside track, in providing for a casing (enclosing the electric rail) "in which is formed a longitudinal slot or opening." A comparison of claim 1 of the patent with the other claims which were rejected and canceled, shows that the distinctive features of the claim allowed were that the opening was placed "in one side of said

housing " and that there was a specification of a particular sort of support, that is, " truss rods attached to the closed side of the housing." In other claims allowed, the reference is to " adjustable stay rods."

The Circuit Court of Appeals for the Tenth Circuit, in the instant case, questioned the patentability of the device and said that if patentability existed at all, it must depend upon the truss rod support or the adjustable stay rods, neither of which the respondents use. We agree with this statement, and we are also of the opinion, as was the Circuit Court of Appeals for the Sixth Circuit, (*Smith* v. *Springdale Amusement Park, supra*), that supplying the feature of the truss rods and the adjustable stay rods did not constitute invention. To provide such supports would be but a step obvious to any skilled mechanic. *Atlantic Works* v. *Brady*, 107 U. S. 192, 200; *Railroad Supply Co.* v. *Elyria Iron & Steel Co.*, 244 U. S. 285, 292; *Powers Kennedy Contracting Corp.* v. *Concrete Mixing & C. Co.*, 282 U. S. 175, 186.

*Decree affirmed.*