632

MARQUETTE TOOL & MFG. CO. et al. v.
HOOVEN, OWENS, RENTSCHLER CO.*
No. 713.

District Court, S. D. Ohio, W. D.
Feb. 10, 1932.

Barnett & Truman, of Chicago, Ill., and Pogue, Hoffheimer & Pogue, of Cincinnati, Ohio, for plaintiffs.

Marechal & Noe, of Dayton, Ohio, and Drury W. Cooper and John B. Hayward, both of New York City, for defendant.

NEVIN, District Judge.

On December 8, 1930, plaintiffs herein filed a bill in equity, claiming infringement by defendant company of certain letters patent. The letters patent referred to are to Bert H. Hawkins, assignor to McCord Manufacturing Company, Inc., No. 1,205,-622, dated November 21, 1916. The plaintiff Marquette Tool & Manufacturing Company alleges in the bill that, before the bill was filed, the McCord Manufacturing Company, Inc., was requested by said Marquette Tool & Manufacturing Company to consent to join as a coplaintiff in this action, but that said McCord Manufacturing Company, Inc., declined so to do. The bill further alleges that the said McCord Manufacturing Company, Inc., is a corporation organized and existing under the laws of the state of New York; that it is not within the jurisdiction of this court, and cannot be made a defendant herein, and therefore the Marquette Tool & Manufacturing Company has joined said McCord Manufacturing Company, Inc., as a plaintiff herein without its consent, in order that the said Marquette Tool & Manufacturing Company may protect its exclusive rights under the patent in suit. The plaintiff, Marquette Tool & Manufacturing Company, is a corporation organized and existing under the laws of the state of Illinois; and the defendant, the Hooven, Owens, Rentschler Company, is a corporation organized and existing under the laws of the state of Ohio. The patent in suit has been referred to throughout the case as the "Hawkins" patent. Only claims 1, 2, and 3 of said patent are relied on by plaintiffs in the present action; it being the claim on behalf of said plaintiffs that the defendant has infringed each of said claims. The plaintiff Marquette Tool & Manufacturing Company prays for a perpetual injunction against the defendant from selling, manufacturing, installing, etc., any device or apparatus in infringement of said claims 1, 2, or 3 of said letters patent, and for an accounting.

Defendant in its answer admits certain of the formal allegations contained in the bill of complaint, but denies that the apparatus or device of the defendant in any way infringes upon the rights of plaintiff, or infringes the said letters patent; and defendant avers that the said patent in suit is invalid for several reasons set forth specifically in the answer, among others, because said patent does not disclose invention over prior patents referred to in the answer; and defendant further claims that, by reason of certain proceedings had or taken in the United States Patent Office in the prosecution of the application for the letters patent involved in this action, the patentees thereof and these plaintiffs herein, as their legal

*Affirmed 61 F.(2d) 1035.

representatives or assigns, are estopped from maintaining that said letters patent cover or embrace any apparatus which the defendant may have made, used, or sold, or which it is now making, using, or selling.

The case came on for hearing before the court on the pleadings and the evidence, consisting of oral testimony and documentary proofs. Witnesses were called by the respective parties, whose testimony was transcribed in the record. Subsequently, the case was argued ably and at length to the court by counsel, both orally and upon briefs.

The court has reviewed the record and briefs of counsel and weighed carefully the arguments presented and reasons and authorities advanced by respective counsel in support of their respective claims. Upon a consideration of the whole case, the court makes the following

### Findings of Fact.

(1) Plaintiff McCord Manufacturing Company, Inc., is the owner of the legal title to the patent herein sued upon, but subject to an exclusive license to Marquette Tool & Manufacturing Company to manufacture and sell throughout the United States for the remainder of the term of the patent, a shop right being reserved by McCord Manufacturing Company, Inc.

(2) Prior to bringing suit, Marquette Tool & Manufacturing Company requested McCord Manufacturing Company, Inc., to join in the suit, which McCord Manufacturing Company, Inc., refused to do.

(3) The invention covered by the claims herein sued on—being claims 1, 2, and 3 of said patent No. 1,205,622—relates to mechanism whereby a sheet metal blank is resiliently gripped by a pneumatic cushion during the operation of drawing the blank into a more or less hollow metal form. Plaintiff Marquette Tool & Manufacturing Company has marketed pneumatic cushions for draw presses embodying the invention of the claims here sued on.

(4) Said devices have met with commercial success. Marquette Tool & Manufacturing Company sold many of the patented cushions to Fisher Body Corporation. In 1930, Fisher Body Corporation invited bids from Marquette Tool & Manufacturing Company for such pneumatic cushion equipment for ten-draw presses. Marquette Tool & Manufacturing Company submitted a bid of $30,000, but did not obtain the order. Defendant, in 1930, furnished to Fisher Body Corporation Hamilton presses, manufactured by defendant and equipped with pneumatic cushions herein complained of as an infringement.

(5) The art of drawing hollow metal forms from sheet metal comprises clamping a sheet metal blank with a yielding grip against the face of a moving die which "draws" the blank over a stationary die to the desired form. In this operation, if the edges of the blank are not held with a sufficiently firm grip, the drawing of the metal into the desired form will cause it to wrinkle, and thus make a defective article. If the blank is held too tightly, the metal will be torn, and thus make a defective article. In the devices used prior to the invention here sued on, effort was made to secure this resilient grip by springs of metal or rubber or by hydraulic jacks.

When springs were used, the progress of the moving die would compress the springs, rapidly increasing the pressure of the springs on the clamping device, so that, if the initial clamping pressure were sufficient to avoid wrinkling, such increasing pressure would tend to hold the blank so tightly as to cause tearing. The use of springs also involved other objections incident to preliminary adjustment, resetting of the springs from time to time, necessity for different sets of springs for different kinds of work on the same machine, nonuniformity of resilience of different springs, crystallizing of the springs, and other objections which have been recognized in the art.

Where hydraulic jacks were used, the yielding resistance would be furnished by in some manner controlling the flow of a body of liquid in an inclosed chamber, involving multiplication of mechanisms, troublesome matters of adjustment, of resistance, and many other problems.

(6) The Patent Office file history of the Hawkins patent shows that Hawkins originally tried to secure claims on the particular feature of using an air cylinder instead of springs in the gripper mechanism for holding the work in draw presses.

This feature was originally claimed (claims 1, 3, and 7) as comprising the following elements of a draw press, viz.: The combination of co-operating dies, a stripper plate, and an air cylinder with a piston working in the cylinder and supporting the stripper plate.

The Patent Office held that this was old and unpatentable, because air cylinders were "the well-known equivalent" of springs or

other elastic means for supporting the stripper plate. These claims were therefore rejected.

(7) The patentee, Hawkins, acquiesced in this position and canceled the claims to such combination.

(8) The patentee then presented a more limited statement of his claim of invention, reciting the combination of all of these old elements, but specifying, as a limitation, that the air container should have such capacity that the pressure remains approximately constant.

The Patent Office also rejected this claim, pointing out that it differed from the known prior art merely in the functional statement as to constant pressure, and that such function would be obtained if the air cylinder "was made very large."

(9) The patentee canceled this claim, and presented a new claim in which the stripper plate was specified as having a "limited movement," and the functional statement was varied to read in substance that the capacity of the container was so great that the variation in pressure was rendered negligible.

The Patent Office again rejected this claim, again insisting that the claim was unpatentable, for the reasons previously stated.

(10) The patentee thereupon canceled this claim, and now presented a new claim, which is claim 1 of the issued patent. This claim of the patent definitely adopted the twice repeated suggestion made by the Patent Office to include the storage tank as a separate element of the claim. The Patent Office stated that the storage tank must be recited as a separate element, if the claim were to be allowed at all. The claim definitely recites two members, instead of one, viz.: "An air storage receptacle" (tank 18) "and" "a movable element" (the piston 14 of the air cylinder 12) "subject to pressure delivered therefrom" (i. e. delivered to the piston 14 from the outside storage receptacle 18).

This "movable element" (the piston 14) necessarily implies the inclusion of the air cylinder 12 to make the piston 14 effective to be "subject to pressure delivered from" the storage tank.

(11) The patentee clearly indicated in offering this claim that he had acquiesced in the Patent Office holding; because the Patent Office had said: "The claim would be deemed allowable if the equalizing tank (tank 18) was made properly an element of the claim."

And Hawkins thereupon replied: "The present claim includes a storage receptacle of some kind, and brings out the relation between the same and the movable element that supports the stripper plate."

(12) Defendant's press has merely the large air cylinder construction, and does not have the separate equalizing tank shown, described, and claimed in the Hawkins patent.

(13) Defendant's construction has a material and substantial increase in pressure, and does not have the negligible increase or constant pressure specified in the patent.

(14) Plaintiff Marquette Tool & Manufacturing Company, from 1916 to date, used the separate equalizing tank like the drawings of the Hawkins patent, and plaintiff never used any construction like the defendant's, with simply the single large air cylinder.

Conclusions of Law.

(1) McCord Manufacturing Company, Inc., was properly joined by Marquette Tool & Manufacturing Company as a coplaintiff herein. Independent Wireless Tel. Co. v. Radio Corporation of America, 269 U. S. 459, 46 S. Ct. 166, 70 L. Ed. 357.

(2) Because of the actions of the patentee, Hawkins, during the proceedings in the Patent Office, the plaintiff licensee, Marquette Tool & Manufacturing Company, is estopped from claiming a monopoly on what the Patent Office refused to grant and which Hawkins surrendered in the Patent Office proceedings, viz. upon the use of this single large cylinder.

(3) The patentee, Hawkins, was compelled to include the storage tank in order to secure his patent, and he cannot now "broaden his claim by dropping the element which he was compelled to include." Limitations imposed by the inventor, Hawkins, "especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers." Smith v. Magic City Kennel Club, 282 U. S. 784, 789, 51 S. Ct. 291, 293, 75 L. Ed. 707.

(4) The plaintiff is "estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto." "Where a patentee has narrowed his claim, in order to escape rejection, he may not 'by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had with-

out the amendments, which amount to a disclaimer.'" Smith v. Magic City Kennel Club, supra.

[5] (5) This estoppel is clear, not only because of the language of claim 1 of the patent, and the expressed admission made by Hawkins in presenting this claim after rejection, but also because, if the interpretation now placed by plaintiff upon this claim were correct (viz. that it covers defendant's use of a single cylinder), then that interpretation would make the claim read precisely like the previous claim which was rejected and was thereupon canceled. "Neither the patentee nor his assignees can be allowed * * * to insist upon such construction of the allowed claim as would cover what had been previously rejected." Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 14 S. Ct. 28, 29, 37 L. Ed. 989.

(6) Claim 1 of the patent must be read and interpreted with reference to the rejected claims, and cannot be construed as to cover what was rejected by the Patent Office. Hubbell v. U. S., 179 U. S. 77, 83, 21 S. Ct. 24, 45 L. Ed. 95.

(7) Claims 2 and 3 of the Hawkins patent in suit also include the equalizing tank as a separate element, and the plaintiff is likewise estopped from ignoring such limitations.

(8) The estoppel that applies to Hawkins and his assignee, McCord Manufacturing Company, Inc., who refused to join in this suit, also applies to the plaintiff licensee, Marquette Tool & Manufacturing Company.

(9) In view of the findings of fact and because of the law of estoppel, all as above set forth, the defendant does not infringe claims 1, 2, or 3 of the patent in suit.

In view of the opinion of this court, as expressed in the findings of fact and conclusions of law, above set forth, that the apparatus or device of the defendant does not infringe the letters patent in suit, it is not necessary for the court to consider, discuss, or pass upon the question of the validity or invalidity of said patent. For the purposes of this decision, it may be assumed or conceded that the patent is valid. As stated by the Court of Appeals in the case of Harris v. Ladd, 34 F.(2d) 761, 764: "Our conclusion is that even conceding the validity of plaintiff's patent, the accused device of defendant does not infringe." Vibroplex Co. v. J. H. Bunnell & Co. (C. C. A.) 16 F.(2d) 975; Edwards Mfg. Co. v. National, etc., Co., 272 F. 23 (C. C. A. 6).

The court is of the opinion that the bill of complaint of plaintiffs herein should be dismissed, and that defendant should go hence with its costs.

An order may be drawn accordingly.