CRESCENT DENTAL MANUFACTUR-
ING CO., Plaintiff,

v.

The S. S. WHITE DENTAL MANUFAC-
TURING COMPANY, Defendant.

Civ. A. No. 14358.

United States District Court
E. D. Pennsylvania.

Sept. 27, 1956.

Joshua R. H. Potts, John A. Robertson, Philadelphia, Pa., for plaintiff.

Henry N. Paul, Jr., John F. A. Earley, Jr., Philadelphia, Pa., for defendant.

CLARY, District Judge.

This action involves a claim for infringement by defendant of United States Letters Patent Number 2,286,599, hereinafter referred to as the "Chott Patent", relating to improvements in mortar and pestle assemblies for use in dental amalgamating machines. The Chott Patent was granted on June 16, 1942, and thereafter was manufactured and sold by the present plaintiff, the assignee of said patent. The parties have stipulated that title to the patent in suit is vested in the plaintiff and the plaintiff claims infringement by the defendant of claims 1, 2 and 3 of said patent by a somewhat similar type mortar and pestle assembly manufactured by the defendant and first placed on the market in the year 1950.

The invention to which the patent claims are directed consists of a capsule and pestle, such as are used in mechanical amalgamators. Amalgamators perform the function of mixing the amalgam that a dentist uses in filling cavities in teeth. For many years dental amalgams have been prepared by using a hand mortar and pestle. The plaintiff developed a machine which imparted a compound movement to the mortar and pestle. The machine itself is not in issue in this case. The mortar and pestle comprise a capsule with a removable cap and a pestle in the form of an elongated cylinder or capsule having rounded edges, into which is placed the ingredients that are to be amalgamated. In addition to the dental mortar and pestles in question there are several other dental amalgamators on the market utilizing the capsule principle. The defendant through its retail stores sold several types of amalgamators, including that produced by the plaintiff. The de-

fendant also produced its own hand-operated mortars and pestles for many years. In 1950 the defendant placed on the market the competing capsule which forms the basis of this litigation. Plaintiff seeks to enjoin further production and sale by the defendant and, in addition, asks for the destruction of all infringing mortars and pestles now in the defendant's possession. It further prays for an accounting demanding treble damages. The defendant admits the issuance of the patent in question, but denies any infringement, and asserts further that the patent is void for anticipation or lack of invention.

An examination of the claims in question and the history of the Chott Patent as shown by the file wrapper is necessary for a complete understanding of the problem. Claim 1 refers to the tilted diagonal position that the plaintiff's pestle actually assumes when the capsule is oscillated. Claim 2 specifies that the concave and convex ends of the mortar and the pestle have the same radii and that the chamber is at least twice the length and diameter of the pestle. Claim 3 refers to the convex ends of the pestle as having the same curvature as the concaved ends of the mortar chamber, and calls for a pestle about one-half the length and diameter of the chamber.

Chott entered a very old and familiar art. As originally filed his claims were directed in very general form to a mortar and pestle having conformed concave and convex ends. These original claims, however, were rejected as being completely anticipated. At the insistence of the Examiner, and in an effort to avoid the prior art, the claims were amended on several occasions and narrowed to specify the relative proportions and positions of mortar and pestle, and on that basis they were finally allowed. The pertinent amendments specified:

1. That the curved ends of the mortar chamber and pestle are formed with approximately the same radii.

2. The end of the pestle forms a true arc conforming to the concave end of the capsule chamber.

3. That by virtue of the combined oscillatory and reciprocatory movement the pestle is thrown into diagonal positions at the ends of its travel.

4. That when the pestle assumed such a diagonal position the "points" on its opposite ends are in contact with the side walls of the capsule.

5. That the mortar chamber has a volume eight times the volume of the pestle.

6. That the length of the mortar is twice that of the pestle.

7. That the diameter of the mortar is twice that of the pestle.

On the other hand, we find the following differences in the defendant's capsule:

1. The curved ends of the mortar chamber and pestle are drawn on different radii.

2. The end of the pestle does not form a true arc conforming to the concave end of the capsule chamber.

3. The pestle is not subjected to a movement which would throw it into diagonal positions.

4. The pestle has no "points" or sharp edges on opposite ends.

5. The volume of the capsule chamber is not eight times the volume of the pestle, but instead only 2.2 times that volume.

6. The length of the capsule chamber is not twice that of the pestle, but is instead only one and a half times that length.

7. The diameter of the capsule chamber is not twice that of the pestle, but is instead only one and one-quarter times that diameter.

■ With these factors in mind a proper evaluation of the issues can be made. On the question of validity I must find that the Chott patent is valid and cannot be said to have been anticipated by the Noble patent which will now be considered. Mortars and pestles are some 3,000 years old. Noble in his patent recognized that the desirable way to make a mortar and pestle was to make the mortar in a cylindrical form with curved ends and make the pestle of a similar shape with curved ends. Chott made no changes in the general form of either the mortar or pestle. His novelty consisted of the relative proportions of length, diameter, and volume, and in the idea of curving the end of the pestle to conform to the curvature of the end of the mortar. He had experimented for several years with these geometric factors in order to produce a type of amalgam desirable for dental use. There is no novelty in the fact that he achieved amalgamation. His novelty consisted in the fact that the peculiar dimensions and construction of his capsule produced amalgamation more rapidly and in a fashion more desirable to dentists. Because of this he was finally granted a patent after several rejections due to the broad scope of his claims in the face of the prior art. Thus, though there was invention, his novelty was of necessity very limited in scope.

■■ At the outset it should be noted that once a patent is properly granted a presumption of validity attaches thereto. Radio Corporation of America v. Radio Engineering Laboratories, Inc., 1934, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163; Artmoore Co. v. Dayless Mfg. Co., 7 Cir., 1953, 208 F.2d 1, 2. The burden is then cast upon one who would assert its invalidity to overcome it by clear proof that the claim lacks patentable novelty. Radio Corporation of America v. Radio Engineering Laboratories, Inc., supra; Artmore Co. v. Dayless Mfg. Co., supra. Such burden has not been overcome by the defendant. In this case the presumption is buttressed by the fact that the Examiner made an immediate and proper reference to the Noble patent which defendant claims can be found to anticipate. The Noble patent was cited in the first action by the Patent Office. It was used in the rejection of the claims. Under such circumstances the presumption of validity becomes even stronger because of the expertise of the Examiner, the rejection, and finally the approval, all with a full knowledge of the prior art. Nordberg Mfg. Co. v. Woolery Machine

Co., 7 Cir., 1935, 79 F.2d 685. Consequently, in the light of the presumption of validity, the expertise of the Patent Examiners, the citation of the Noble patent, and the novelty in the very special and precise geometric qualities which produced a more desirable dental amalgam, the validity of the Chott patent must be upheld. However, because of these critical limitations incorporated into Chott's claim in order to avoid the prior art, he narrowed his claim, and for that reason the plaintiff fails to satisfy the burden of making out a case of infringement on the part of the defendant.

It is clear from the file wrapper that plaintiff had great difficulty in acquiring an allowance of his claims. By ultimately laying great stress on the peculiar dimensions of his capsule he was finally granted the patent. Without this, the claim would have been and properly should have been rejected in toto. In the field of patent law there is an unusual but well established doctrine called the rule of file wrapper estoppel. In sum it amounts to this. When a patentee expressly limits his alleged invention in order to avoid the prior art and relies on the distinguishing features of the limitations and the advantages to be derived therefrom in advocating the allowance of his claims, he cannot thereafter contend that his claim was not so limited in order to make out a case of infringement. Smith v. Magic City Kennel Club, Inc., 1930, 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707; Bobertz v. General Motors Corporation, 6 Cir., 1955, 228 F.2d 94, 97.

Closely allied to this doctrine is the doctrine of equivalents. The doctrine arose because of the impracticability of requiring exact duplication of each item in a claim in order ·to make out a case of infringement. In effect it provides that if the element allegedly infringing performs the function or achieves the result in the same fashion as the element of the claim, then that element is the equivalent of the element called for by the claim. Graver Tank & Manufacturing Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097.

However, the range of equivalents can be greatly limited by the patentee's own action in placing limitations on his claims in order to secure the patent without duplication of the prior art. In short, the patentee cannot limit the scope of the claim so as to avoid the prior art and then broaden it in order to establish infringement. That is precisely what plaintiff has attempted in this case. Chott was forced to rely on his claims with reference to the peculiar length, diameter, volume, curvature of the pestle ends, and diagonal position of the pestle in order to secure his patent. Without these narrow specifications no patent could have been secured. Hence, he cannot claim infringement by the defendant since the latter incorporates none of these peculiar features in his capsule, but merely follows the prior art. Thus, in view of the state of the prior art, as disclosed in the file wrapper, the range of equivalents available to the plaintiff is not broad enough to encompass the item being produced by the defendant. Steffan v. Len A. Maune Co., 8 Cir., 1956, 234 F.2d 750. Consequently, I must find that the plaintiff's patent is valid but that the plaintiff has failed to make out a case of infringement on the part of the defendant. Therefore, the complaint must be dismissed.

Both plaintiff and defendant have submitted proposed findings of fact and conclusions of law. The Court affirms Plaintiff's Requested Findings of Fact Nos. 1, 3, 4, 6, 7, 8, 9 and 13, and denies, as stated, Requests Nos. 2, 5, 10, 11, 12 and 14 through 17 inclusive. The Court also affirms Defendant's Proposed Findings of Fact Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 14, 15 and 16, and denies, as stated, Requests Nos. 12, 13 and 17.

The Court affirms Plaintiff's Requests for Conclusions of Law Nos. 1, 3, 4 and 6, and denies, as stated, Requests Nos. 2, 5 and 7 through 14 inclusive. The Court also affirms Defendant's Requests for Conclusions of Law Nos. 1, 4 and 5, and denies, as stated, Requests Nos. 2, 3 and 6.

In view of the foregoing findings, an appropriate order will be entered by the Court adjudging the said Patent to be valid but dismissing the complaint for lack of infringement. Each party will bear its own costs.