The **FLINTKOTE COMPANY**, Plaintiff,

v.

**ARMSTRONG CORK COMPANY** and Empire Carpet Corporation, Defendants.

No. 66 Civ. 754.

United States District Court, S. D. New York.

Oct. 31, 1970.

Curtis, Morris & Safford, New York City, for plaintiff; Robert D. Spille, Garo A. Partoyan, New York City, of counsel.

Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, for defendants; Daniel H. Kane, John Kurucz, Paul L. Barrett, New York City, of counsel.

## OPINION

COOPER, District Judge.

Plaintiff, Flintkote Company (hereinafter "Flintkote"), a Massachusetts Corporation, is engaged in the manufacture and distribution of floor coverings. (Tr. 78).[1] Pursuant to an agreement dated March 11, 1965 (P.Ex.3)[2] it acquired an exclusive license for the production of "Walk-Ease," a product developed under the teachings of a patent owned by Evertex Co. Ltd.[3]

The patent in suit, United States Letters Patent No. 3,002,868 (P.Ex.1), granted to Horace Boivin, president of Evertex (Tr. 22), defines a cushion backed vinyl floor covering comprised of a polyvinyl chloride wear or surface layer, a woven glass reinforcing intermediary layer, and a resilient sponge backing layer. (Tr. 29). The principal benefits of the Boivin patent as incorporated into Walk-Ease are twofold: the utilization of fiberglass provides dimensional stability to the flooring (Tr. 30–4)[4] and allows for an improved method of adherence of the wear layer to the foam backing.[5] The cynosure both of the Boivin patent and this litigation is the positioning and method of construction of the intermediate sheet of woven glass fibres. Prior art reveals the existence of both a multi-layered floor covering having a vinyl top layer and a foam backing surrounding an intermediate material, e.g. Rainer patent, No. 2,961;929 (D.Ex.01), Banks patent, No. 2,816,852 (D.Ex.02), and the use of a woven glass fabric as a component in a variety of products, e.g. Thompson patent, No. 2,629,678 (D.Ex.03), Belgian patent, No. 564,890 (D.Ex.04). Further, it is undisputed that the wear layer and backing layer of defendants' products are for purposes of this litigation indistinguishable from those found in Walk-Ease.

Plaintiff alleges that defendant Armstrong Cork Company's (hereinafter "Armstrong") products,[6] Cambrian,

---

1. "Tr." followed by a page number refers to the trial transcript.

2. "P.Ex." or "D.Ex." refers to plaintiff exhibit or defendant exhibit introduced at trial.

3. Evertex obtained ownership of the patent by virtue of an assignment from Horace Boivin (P.Ex. 2).

4. This quality permits the "rapid recovery" of the vinyl from any indentation caused by a heavy object such as a stiletto type heel. (Tr. 30–1).

5. Additional attributes of plaintiff's product as recited in the patent are: resistance to wear, ease in maintenance, sound insulation elimination of vibrations from traffic, and a covering "soft" and "restful" as a deep pile carpet.

6. Flintkote instituted this action against Armstrong and two other defendants, Empire Carpet Corporation, a subsidiary

Cambrelle, and Cushion Coronelle[7] infringe the patent in suit.[8] Defendants deny the allegation of infringement; assert that their wares are clearly distinguishable from Walk-Ease; that the Boivin patent is invalid.

Jurisdiction and venue are conferred under the patent laws of the United States, 35 U.S.C. and 28 U.S.C. §§ 1338, 1392, 1400.[9]

This opinion constitutes our findings of fact and conclusions of law in accordance with Rule 52, F.R.Civ.P.

### The patent in suit

The Boivin patent sets forth two claims:

1. A floor covering comprising a sheet of reinforcing tightly woven glass fabric united, on one face thereof, to a resilient sponge backing layer and adhering, on the other face thereof, to a facing layer of a wear resistent resin.

2. A floor covering comprising a sheet of reinforcing tightly woven glass thread fabric united, on one face thereof, to a backing layer of sponge rubber and adhering, on the other face thereof, to a facing layer of polyvinyl chloride.

In essence, the product envisioned by Boivin is a floor covering composed of three distinct layers of material: a polyvinyl chloride facing layer, a resilient sponge rubber backing layer, and an intermediate layer of a woven glass fabric. Further, the patent prescribes that the fiberglass sheet be tightly woven, and that the adherence of the three layers be accomplished by bonding both the vinyl and sponge layers to that of the glass.

### Literal infringement

Flintkote alleges that Armstrong's marketed floor coverings contain each and every element of the invention as defined by Boivin and therefore literally infringe the patent in suit. On the basis of the evidence before us, we conclude that Coronelle does not literally infringe the Boivin patent in that two of its essential requisites are not present in defendants' product.

Both Boivin claims provide that the intermediate layer be composed of a tightly woven glass fabric; Armstrong's Coronelle utilizes an open weave glass scrim.[10] (Tr. 222). Plaintiff's argument, that the form of weave employed in the manufacture of Coronelle is in fact "tight" as contemplated by the patent in suit, is unpersuasive.

At trial, plaintiff pressed the contention that in industry parlance a tight weave describes a method of weaving during which the individual warp ends and filling ends are held taut or rigid, (Tr. 33–4, 57–8) and is unrelated to the distance between strands. Therefore, although Coronelle has an open or widespaced weave, plaintiff contends that its middle fiberglass layer is still tightly woven. (Tr. 36, 103).

However, we find more convincing the definition of a "tightly woven fabric" as

---

and distributor of Armstrong, and Fashion Floor Inc., a customer of both Armstrong and Empire. The complaint has been dismissed, by agreement among the parties, as to Fashion Floors.

7. The parties have stipulated that the claimed elements of infringement are common to all three products, and that any variation in the three named floor coverings are irrelevant to a determination of the issues before us. (Tr. 21). Therefore, in considering defendants' products, we need only refer to Coronelle which is exemplificative of defendants' entire line.

8. The complaint additionally alleged theft of trade secrets ("know-how.").; this claim has been withdrawn by Flintkote. (Tr. 9).

9. Armstrong's claim that the absence of Evertex as a party to this litigation deprives this Court of jurisdiction has been withdrawn. (Tr. 52–3).

10. "Scrim" was defined by witness Desch, research manager at Armstrong, as "a type of woven or nonwoven fabric which is open mesh, that is, has large interstices or spaces between the warp and the filling strands." (Tr. 229).

advanced by defendants—the size of the space between adjoining strands as a function of the number and width of ends per inch. (Tr. 244, 269). In the manufacture of either an open or tightly woven glass fabric, the weaving cannot be satisfactorily accomplished without exerting tension on the yarns. (Tr. 267, 107, 116–7). In prosecuting his claim before the Patent Office, Boivin included advertising clearly equating "tightly woven" with "closely woven." (Tr. 66–70).

Further, Flintkote, in its post-trial brief appears to abandon this position and rely exclusively on its second contention that defendants' product is tightly woven because of their use of a leno weave method to construct the fiberglass layer. (Plaintiff's Post-Trial Brief, April 15, 1970, pp. 3–4). Leno is a particular type of weave in which two adjacent warp ends are crossed to form a loop which interlocks the filling end securely fastening into position each fibre. (Tr. 230, 254, D.Exs. P, Q, R.). Plaintiff insists that such a weave results in "tightly wrapped warp pairs" and a "firm fabric" (Tr. 39, 116), constituting a tightly woven fabric as recited in the Boivin patent.

However, Walk-Ease, which presumably follows the teachings of the patent does not utilize a leno weave, but rather the standard plain weave. We are unconvinced that the fact that individual fibres are tightly clasped is synonymous with the far broader term, more accurately reflecting a quality of the overall material, a tightly woven fabric.

Our resolution that "tightly woven" as used in the patent in suit refers to the closeness of the fibres is amply supported by the second distinction between the products in issue. We come to that now.

### The second distinction

The Boivin claims recite that the intermediate glass sheet is "united on one face thereof" to the foam backing and "adhering, on the other face thereof" to the facing layer. The language contemplates five (5) distinct zones: the three material layers, and a separate adhesive layer formed by joining the glass fabric to the two surrounding layers.[11] Coronelle's wide-spaced mesh weave creates relatively large interstices between the neighboring fibres allowing the hot melt adhesive to flow thru the openings and form a direct bond between the under surface of the wear layer and upper surface of the backing layer. (Tr. 142, 221). The fact that the glass scrim does in limited areas physically separate the adhesive attached to the facing and backing layers (Tr. 372) is not analagous to the method of adherence set forth in the patent in suit. The possibility, as suggested at trial by plaintiff, that an adhesive might be thickened to the proper viscosity so as not to permeate the interstices of the glass scrim appears highly impractical. (Tr. 365). Further, even assuming the use of such an adhesive could result in the proposed method of attachment, the Armstrong product is not so constructed.

Most importantly, the method of attachment prescribed by the claims is instructive in defining the term "tightly woven." To accomplish the separate binding of the glass to both the vinyl and foam requires a closely packed intermediate layer. The mere fact that each fibre is held securely in place would not by itself create the compact layer necessary to provide the surface (or facing) to which bonding could occur. The method of adherence described by Boivin is realizable only if the fibres are closely woven together to form a

---

11. Witness Bartlett, an expert called on behalf of plaintiff, in response to the following question, "Is there any direct bonding by the same cement or adhesive that is used to secure the foam to the glass fabric; is there any direct bonding in this case to the wear layer surface?" stated:

"A. Not by intent." (Tr. 144).

dense sheet, as found in Walk-Ease. Compare D. Exs. P, Q.

The method of manufacture, graphically depicted in defendants' exhibits K2 and 3, and M5, highlights these two distinctions. Flintkote processing requires the application of an adhesive during two distinct stages of production separately bonding the woven glass to the wear and form layers, whereas Coronelle's facing and backing layers are fused directly by the introduction of the adhesive as it permeates the scrim. Accordingly, we find Armstrong's Coronelle beyond the literal scope of the Boivin claims.

### Doctrine of equivalents

Flintkote alleges that even if it fails to sustain its claim of literal infringement, defendants' product is sufficiently similar to the principles of the invention as set forth in the Boivin patent as to constitute infringement under the doctrine of equivalents.

■ The doctrine recognizes that to permit imitation of a patented invention simply because the copyist does not include every little detail in his product but rather makes unimportant and insubstantial changes thereby taking the copied matter beyond the language of the claims would "convert the protection of the patent grant into a hollow and useless thing." Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); Reiner v. I. Leon Co., Inc., 324 F.2d 648 (2d Cir.1963). The patentee is offered the opportunity to benefit to the full extent from his invention; the doctrine serves to extend the literal language of the patent claims to other products which perform substantially the same function in substantially the same way to obtain the same result. Rich Products Corp. v. Mitchell Foods, Inc., 357 F.2d 176, 182 (2d Cir.1966); Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147

(1929); Nelson v. Batson, 322 F.2d 132 (9th Cir.1963). Therefore, plaintiff asserts, despite the above discussed differences between Walk-Ease and Coronelle, the Armstrong product utilizes the essential teachings of the Boivin patent—a woven glass fabric as an intermediate layer to impart dimensional stability to floor coverings.

However, what constitutes equivalency is determined not solely by the language of the claims but by reference to the context in which the patent was issued and the prior art of the industry. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). We find the file wrapper history of the Boivin patent severely restricts the range of equivalents it properly encompasses. Reiner, supra; Nelson, supra, 322 F.2d at 135.

### The file wrapper history

Boivin, in his initial application to the Patent Office set forth nine separate claims (D.Ex.G1, p. 5; Tr. 291): the first four broadly spoke of a floor covering comprised of a "wear resistant facing, a resilient backing, and interposed between and adhered with said facing and said backing, a sheet of fabric whose adherence properties to said facing and backing are superior to the adherence properties between said facing and said backing."[12] The remaining claims detailed the elements of the prospective product, specifying that the intermediate fabric be "a sheet of woven glass threads having adhered thereon a fire-resistant facing of polyvinyl chloride resin * * * and a sponge backing selected among foam rubber and vinyl foam." All nine claims were explicitly rejected by the patent examiner (D.Ex. G1, p. 10; Tr. 291–2). Claims 1–4 were found to be "fully met" by U.S. Patent 2,629,678 (Thompson), which provides for a leather substitute consisting of three zones: a "top layer * * * of any of the various synthetic resins * * * and may be a polymer of

---

12. At the very outset of the prosecution of his proposed patent, Boivin stressed the separate method of adherence.

vinyl chloride * * *," a cushioning layer "made of foamed latex," and each attached to a layer of fabric "interposed between the upper and lower layers * * * preferably of an open mesh." (D.Ex.G–4).

The more specific claims were considered unpatentable by the examiner in light of the potential combination of the Thompson patent with that of Panagrossi, U.S. patent 2,703,775. The latter patent, relating to the bonding of silicone sponge rubber, advocated attaching a glass cloth "to the silicone rubber sponge, and this laminate is cemented to the surface which is covered with the glass cloth disposed between the rubber sponge and the surface to which it is applied." (D.Ex.G5). In short, plaintiff's claims describing a multilayered sponge back floor covering, or its more specific claims detailing the intermediate fabric as a woven glass, were found unoriginal and therefore unpatentable.

Boivin then sought to amend his original application by withdrawing the first four claims, and further detailing claims numbered 5–9 by adding the additional specification that the middle layer be composed of a sheet of reinforcing tightly woven glass threads. This modification was likewise found by the patent examiner as insufficient to distinguish Boivin's proposed patent from prior art. (D.Ex.G1 p. 14).

Boivin further amended his application, cancelling the prior claims still on file before the examiner and entering the two claims which form the basis of the patent before us. The claims continued to provide for a sheet of reinforcing tightly woven glass fabric, and required in addition, that this fabric be "united" to the backing layer and "adhere" to the facing layer. In explanation of the "main feature of the invention, as opposed to the composite materials of the prior art cited by the Examiner," Boivin pointed to the method of adherence whereby the glass thread fabric would be "used to join together a facing layer of a wear-resistant material * * * and a layer of sponge rubber." (D.Ex.G, p. 14). The use of fiberglass as a material to impart dimensional stability had long been well recognized. (Tr. 73). Boivin, to secure his patent, clearly linked his floor covering to a tightly woven fiberglass sheet and a distinctive method of two-faced adherence neither of which we found to be duplicated in defendants' product.

■ ■ A patent applicant, such as Boivin, compelled by the rejection of the patent office to narrow his claims before successfully securing a patent, is estopped after its issuance from resorting to the doctrine of equivalents in order to broaden his claim to include that which was denied. Smith v. Magic City Kennel Club, Inc., 282 U.S. 784, 789, 51 S.Ct. 291, 75 L.Ed. 707 (1931); Exhibit Supply Co. v. Ace Patent Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 (1941). Rejection of a claim, in the course of proceedings before the patent office, prohibits an interpretation "of those secured which leaves them identical with that rejected. * * *" International Latex Corp. v. Warner Bros. Co., 276 F. 2d 557, 565 (2d Cir.1960).

■ This file wrapper estoppel arises from Boivin's failure to appeal the examiner's rejection of his initial claims, combined with his subsequent attempt to distinguish his product by narrowing its scope. This Court cannot inquire into whether the examiner was right or wrong in rejecting the original claims, Smith, supra, 282 U.S., at 789, 51 S.Ct. 291, or speculate as to Boivin's motivation for the procedure he chose or relieve him from its consequences. International Latex, supra, 276 F.2d at 565.

■ ■ We cannot go along with plaintiff's argument that file wrapper estoppel is inapplicable because Boivin's first amendment, which required a tightly woven fabric, was rejected. (Plaintiff's Post-Trial Brief, April 15, 1970, p. 13). Estoppel results from the inventor's self-imposed limitations inserted in his claims to distinguish his proposed product from the industry's prior art. Both limitations, the tight

weave and the adherence method, fit squarely within this concept; as such, plaintiff cannot now assert the doctrine of equivalents to establish his claim of infringement by defendants' product.

### Conclusion

For the reasons set forth above, plaintiff has failed to establish that defendants' products, Cambrian, Cambrelle or Cushion Coronelle, infringe the patent in suit. Accordingly, we need not consider defendants' contention that the Boivin patent is invalid.

The Clerk is directed to enter judgment in favor of defendants.

So ordered.